UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARY ANN L. A.,

Plaintiff,

v.

CASE NO. 6:25-cv-06198 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 7, 12), as well as Plaintiff's reply brief (Doc. 13). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

# I. RELEVANT BACKGROUND

## A. Procedural Background

On October 18, 2017, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of May 17, 2008.[1] (Tr. 95, 301-03.) Plaintiff's claim was denied initially. (Tr. 105.) She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared *pro se* for a telephonic hearing before ALJ John Costello on June 8, 2021. (Tr. 60-94.) On June 29, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 115-29.) The Appeals Council denied her request for review, (Tr. 130-36), and Plaintiff timely filed her appeal to this Court.

The Western District of New York remanded her case by stipulation of the parties, (Tr. 137-39), and on November 4, 2024, the ALJ held a video hearing, where Plaintiff appeared with counsel, (Tr. 21-59). On January 2, 2025, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (Tr. 1-20.) Plaintiff then appealed directly to this Court.

## B. Factual Background

Plaintiff was born on December 1, 1987, and she graduated high school. (Tr. 33.) Her disabling conditions were alleged to include depression, anxiety, minimal scoliosis of the mid lumbar spine, degenerative joint disease, as well as issues with her spinal canal. (Tr. 95-96.)

---

[1] Plaintiff previously received Title II disability benefits until January, 2017, and so the earliest potential onset date for the disability under this application was January 1, 2017. (Tr. 5.) Accordingly, the relevant period for this case is January 1, 2017 through June 30, 2018 (date last insured). (*See id.*)

### 1. Plaintiff's Testimony at the Hearing

At the most recent hearing before the ALJ, Plaintiff testified as to her limiting impairments through 2018. (Tr. 36.) Plaintiff explained that she had lower back pain, which began in 2009, and which would sometime shoot down her right side, down to her knee and sometimes down to her foot. (Tr. 36-37.) She further described that it sometimes goes down the other side and can go back and forth between them. (*See* Tr. 37.) She indicated the pain is always present and starts at a pain level of four or five and then would rise to about an eight by the end of the day. (*See id.*) She indicated that sitting is particularly painful, and she cannot do it more than five minutes without pain shooting down her tailbone. (Tr. 45.) Plaintiff also described the treatments she had undergone, including medications, injections, burning away nerves in her spine, and physical therapy, indicating that none of it helped. (Tr. 37.) She explained that she has consulted with a spinal surgeon, but they did not advise surgery given her young age. (Tr. 38.)

Plaintiff noted that her impairments limit her ability to pick up even her children, as she can only lift less than ten pounds. (*Id.*) Due to allergic reactions to certain pain medications, she has limited her medication to over-the-counter medications, such as Tylenol and Ibuprofen. (*Id.*)

She also described neck pain she began experiencing in 2018, noting that she would have severe pain shooting up her head, causing migraines behind her eyes. (Tr. 39.) The cause of this pain was identified as a herniated disc in her neck as well as bone spurs.[2] (Tr. 40.) Plaintiff categorized this pain as a five or six out of ten. (*See id.*) She

[2] They also discovered a tumor on her pituitary gland in 2020, which contributed to her migraines. (Tr. 40.)

has tried physical therapy, acupuncture, and chiropractic care, but she indicated nothing has helped. (Tr. 41.) She testified to having three to four migraines a week but also having "regular" headaches every day. (*See id.*) Surgery has been discussed but concerns given her younger age have been raised. (Tr. 40.) She explained that her headaches prevent her from caring for her kids. (Tr. 42.)

Plaintiff also described her mental health treatment, indicating she takes medication but does not want to talk to a counselor. (Tr. 43.) She explained that she has not found talking to anyone to be helpful, although she has tried doing online therapy. (*Id.*) Plaintiff described that she felt her depression every day, explaining that it stemmed from sadness about not being able to fully engage with her kids and guilt for the work her husband does in caring for the family when she cannot. (Tr. 44.) Plaintiff also indicated that she gets anxiety when she needs to go places, as she is afraid that she will "look stupid." (*Id.*)

### 2. Medical Opinion Evidence[3]

Agency reviewer Dr. Periakaruppan reviewed Plaintiff's file in January 2018. (Tr. 101-02.) He limited Plaintiff to light work, further limiting Plaintiff to being able to frequently climb ramps/stairs, balance, and stoop, as well as occasionally climb ladders/ropes/scaffolds, crouch, and crawl. (*See id.*)

[3] Because Plaintiff limited her challenge to the ALJ's physical RFC, she has waived any challenge to the mental RFC, and the Court will limit its recitation of the medical opinion evidence to those opinions pertinent to her alleged physical impairments.

Agency reviewer Dr. Abueg also reviewed Plaintiff's file in March 2019. (*See* Tr. 110-11.)[4] Dr. Abueg found insufficient evidence to evaluate the claim for the pertinent time period. (*See* Tr. 110.)

In October 2024, Physicians Assistant Sydney Salone submitted a "Treating Medical Source Statement." (*See* Tr. 754-58.) In this statement, PA Salone noted that this evaluation occurred on her first visit with Plaintiff.[5] (*See* Tr. 754.) PA Salone noted Plaintiff's symptoms and diagnoses, reflecting that Plaintiff had not "had significant improvement since symptoms started over 10 years ago." (*See id.*) When asked to identify clinical findings and objective signs, PA Salone noted "[d]ecreased sensation and strength in right lower extremity. Difficulty ambulating." (*See id.*) PA Salone opined that Plaintiff's ability to concentrate would be interrupted by pain or other symptoms "constantly" and that she would be capable of "low stress jobs." (*See* Tr. 755.) She further limited Plaintiff to being able to walk one block, sit for ten minutes at a time, stand for ten minutes at a time, each for a total of less than two hours in a day. (*See* Tr. 755-56.) She maintained that Plaintiff would need to be able to take unscheduled breaks during the workday and transition at will from sitting, standing, or walking. (Tr. 756.) PA Salone also opined that Plaintiff would be absent more than four days per month and also have other limitations postural and lifting limitations. (*See* Tr. 756-57.)

[4] The Court notes that the ALJ evaluated the administrative findings of Dr. Abueg, characterizing it as the reconsideration level of this claim. (*See* Tr. 12.) However, the Court notes that this administrative finding appears to relate to Plaintiff's subsequent claim filed on January 14, 2019. (*See* Tr. 107.)

[5] PA Salone worked in Dr. Miller's office, who is Plaintiff's treating physician. (Tr. 39.) Plaintiff sees multiple physician's assistants in the office.

### C. ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2018. (Tr. 7.)

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2017 through the date last insured, June 30, 20 18 (20 CFR 404.1571 *et seq.).* (Tr. 7.)

3. Through the date last insured, the claimant had the following severe impairments: lumbar degenerative disc disease, depressive disorder (not otherwise specified) and anxiety disorder (not otherwise specified) (20 CFR 404.1520(c)). (Tr. 7.)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 8.)

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to carrying out simple, routine tasks; and only occasional interaction with supervisors, co-workers, and the general public. (Tr. 9.)

6. From January 1, 2017 through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). (Tr. 14.)

7. The claimant was born on December 1, 1987 and was 30 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). (Tr. 14.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 14.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 14.)

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). (Tr. 14.)

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2017, the alleged onset date, through June 30, 2018, the date last insured (20 CFR 404.1520(g)). (Tr. 15.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B. Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has

lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff asserts two arguments in support of remand. First, she argues that the ALJ failed to provide valid reasoning for rejecting PA Salone's opinion. (Doc. 7-1 at 7.) Second, she contends that the ALJ failed to properly evaluate Plaintiff's well-supported subjective complaints of pain. (*See id.* at 10.)

**A. The ALJ Properly Evaluated the Opinion of PA Salone.**

Plaintiff contends that the ALJ erred in his evaluation of the opinion evidence by relying on the agency reviewer's opinion instead of Plaintiff's primary care provider, PA Salone, without giving a valid reason. (*See id.* at 7.) According to Plaintiff, as a result of these errors, the ALJ's determination is not supported by substantial evidence. (*See id.*)

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a

medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

The ALJ evaluated PA Salone's statement as follows:

> Sydney Salone, PA, submitted a medical source statement in October 2024 and opined that the claimant had less than sedentary exertional limitations, could never twist, stoop, crouch/squat, climb ladders or stairs, would need to take daily unscheduled breaks for ten minutes at a time, and would need to be allowed to be absent from work more than four days per month. Physician Assistant Salone's one-time exam of the claimant does not fully support the opinion as it lacks a longitudinal history. It is inconsistent with the medical evidence of record during the period under adjudication here, including the claimant's physical examination from December 2017, demonstrating that the claimant was able to heel/toe walk without difficulty, forward flex at the waist with her hands to mid shin while maintaining good extension with only mild pain, demonstrated normal strength and sensation throughout her bilateral lower extremities and had a negative seated root test bilaterally as well as a report from July 2018 that reported some low back pain, with tenderness in the L3 to L5 area and the left lower lumbar musculature with a negative seated straight leg raise test bilaterally.

(Tr. 13) (citations omitted).

Having carefully reviewed the record, the Court finds that the ALJ properly analyzed PA Salone's opinion as required by the regulations. First, the ALJ's evaluation properly considered both supportability and consistency. He found that PA Salone's

single examination did not fully support the opinion, noting it lacked longitudinal history. (*See id.*) This is true, given that PA Salone had not previously examined or treated Plaintiff. Thus, there were no treatment notes from PA Salone to support her conclusions. Plaintiff points to Plaintiff's treatment history, arguing it was consistent with PA Salone's restrictions. (*See* Doc. 7-1 at 8-9.) And, while there may be some facts supporting PA Salone's statements regarding Plaintiff's struggle with pain and continued treatment, that consistency, standing alone, does not support the significant restrictions recited by PA Salone. Indeed, the ALJ identified other facts contradicting PA Salone's restrictions and suggesting Plaintiff was functionally capable of more. (*See* Tr. 13); (*see also* Tr. 439, 600.) It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin, Com'r*, 683 F.3d 443, 448 (2d 2012) (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is what Plaintiff requests. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

While Plaintiff argues that the ALJ inconsistently evaluated the opinions in the record based on longitudinal treatment, the Court disagrees. Importantly, PA Salone's opinion was submitted as a treating provider medical source statement. (*See* Tr. 752-62.) Thus, the ALJ aptly noted the lack of longitudinal history, specifically given the severity of the assigned restrictions and the lack of detailed explanation provided within the statement. (*See* Tr. 13.) Additionally, ALJ Costello found PA Salone's opinion inconsistent with other record evidence—the same record evidence that was consistent with the agency reviewer opinion. (*See* Tr. 12, 13); (*see also* Tr. 439.) Thus, as required by the regulations, the ALJ considered the consistency of the opinions of both medical experts with the whole of the record. *See Jacqueline L.*, 515 F. Supp. 3d at 7. And the law is well-settled that an ALJ can rely on the opinion of a non-examining expert over an examining expert if it is more consistent with the record. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (recognizing that "[t]he report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record"); *see also Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

Plaintiff next takes issue with the ALJ comparing PA Salone's opinion to "one other examination" from December 2017, arguing that the ALJ elevated his lay opinion over that of a medical expert. (*See* Doc. 7-1 at 9-10.) The Court disagrees. Significantly, while PA Salone supported her conclusions with Plaintiff's continued pain and other symptoms, these are subjective reports. PA Salone did not identify a single objective examination or diagnostic test to support her opinion. To the contrary, the December 2017 examination cited by the ALJ was within the relevant time period and contained

objective evidence that contradicted Plaintiff's subjective reports. (*See* Tr. 439); (Tr. 13) (noting that the examination demonstrated "that the claimant was able to heel/toe walk without difficulty, forward flex at the waist with her hands to mid shin while maintaining good extension with only mild pain, demonstrated normal strength and sensation throughout her bilateral lower extremities and have a negative seated root test bilaterally"). He also cited an additional objective examination within the relevant period from July 2018. (*See* Tr. 600); (Tr. 13) (identifying "a report from July 2018 that reported some low back pain, with tenderness in the L3 to L5 area and the left lower lumbar musculature with a negative seated straight leg raise test bilaterally.").

Accordingly, the Court finds no error in the ALJ's evaluation of PA Salone's opinion.

**B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain.**

Plaintiff next argues that the ALJ failed to properly evaluate her subjective complaints of pain. (*See* Doc. 7-1 at 10-13.) Plaintiff contends that the ALJ improperly attributed her pain to the fact that she was pregnant during the relevant period. (*See id.* at 11-12.)

"A claimant's subjective complaints are 'an important element in the adjudication of [Social Security] claims, and must be thoroughly considered in calculating the RFC of a claimant.'" *Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010)). "At the same time, an ALJ is 'not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony

in light of the other evidence in the record.'" *Id.* (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit a plaintiff's ability to do work. *See id.*

When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the plaintiff and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors. *Lynn V. v. Comm'r of Soc. Sec.*, 6:24-cv-43, 2024 WL 5454786, at * (N.D.N.Y. Dec. 2, 2024) (citing 20 C.F.R. § 404.1529(c)(3)). *See also* 20 C.F.R. § 404.1529(c)(4) (requiring the ALJ to consider "the extent to which there are any conflicts between [subjective statements regarding symptoms] and the rest of the evidence.")

"[T]he court must uphold the ALJ's decision to discount a [plaintiff's] subjective complaints of pain if the finding is supported by substantial evidence. It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the [plaintiff]." *Shateara E. v. Comm'r of Soc. Sec.*, No. 21-CV-00360-FPG, 2023 WL 5603217, at *4 (W.D.N.Y. Aug. 30, 2023) (internal citations and quotation marks omitted); *see also Torres v. Comm'r of Soc. Sec.*, 22-cv-00003-MJP, 2024 WL 5090815, at *4 (W.D.N.Y. Dec. 12. 2024) (noting that the "credibility findings of an ALJ are entitled to great deference and are reversible only if they are patently unreasonable.") (internal citations and quotation marks omitted)

The ALJ addressed Plaintiff's subjective complaints in his decision:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, the medical evidence does not support the allegations of symptom severity and resulting functional limitations to the degree that is alleged.

(Tr. 10.)

The Court finds that the ALJ properly evaluated Plaintiff's subjective complaints and concludes that his findings are supported by substantial evidence. Indeed, the ALJ detailed Plaintiff's treatment history during the relevant period, highlighting the objective results of two objective evaluations which largely reflected mostly normal results. (*See* Tr. 11-12); (*see also* Tr. 439; 600.) He further made note of Plaintiff's daily activities, which are inconsistent with Plaintiff's complaints. (*See* Tr. 9, 10) (noting Plaintiff can cook, drive,

shop on the computer, pay bills, play with her children.) *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (recognizing that "[t]he ALJ also relied on Cichocki's Daily Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work.").

While Plaintiff argues that the ALJ improperly attributed her pain to her pregnancy, rather than her physical impairments, the Court disagrees. The ALJ recited Plaintiff's status as pregnant only twice in his decision. (Tr. 10, 11) ("While [Plaintiff] alleged that the pain was caused by an injury that occurred in March 2017, at the time of her complaints, she was 26 weeks pregnant with twins") ("According to [Plaintiff], seven months prior to her presentation, while she was pregnant with twins, a bench broke causing her to fall when she sat on it."). The Court does not find either of these statements to improperly assign Plaintiff's pain to her pregnancy, and while Plaintiff indicated in prior testimony she believed her previous benefits were discontinued due to her becoming pregnant, that situation is not supported by objective evidence nor within this Court's purview.

The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints of pain consistent with the regulations and supported by substantial evidence in the record.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: September 24, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge